1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 05, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CASSANDRA R.,[1]

               Plaintiff,

     v.

ANDREW M. SAUL, the Commissioner
of Social Security,

               Defendant.

No.   4:19-CV-5245-EFS

**ORDER DENYING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND GRANTING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Cassandra R. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) discounting Plaintiff's symptom reports, 2) improperly weighing the medical opinions, 3) improperly determining that the impairments did not meet or equal Listing 1.08, and 4) improperly

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 11 & 12.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

assessing Plaintiff's residual functional capacity and therefore relying on an incomplete hypothetical at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 11, and grants the Commissioner's Motion for Summary Judgment, ECF No. 12.

## I.      Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 416.920(a).

[4] *Id.* §416.920(a)(4)(i).

[5] *Id.* § 416.920(b).

[6] *Id.*

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. § 416.920(a)(4)(ii).

[8] *Id.* § 416.920(c).

[9] *Id.*

[10] *Id.* § 416.920(a)(4)(iii).

[11] *Id.* § 416.920(d).

[12] *Id.* § 416.920(a)(4)(iv).

[13] *Id.*

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed a Title XVI application, alleging a disability onset date of June 30, 2013.[18] Her claim was denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Stewart Stallings.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since April 5, 2016, the application date;

---

[14] 20 C.F.R. § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 64.

[19] AR 72 & 84.

[20] AR 36-63.

- Step two: Plaintiff had the following medically determinable severe impairments: prolapsed bladder with mesh insert, resulting in chronic pelvic pain;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform sedentary work except:

  > [S]he can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps or stairs; and she should avoid exposure to moving or dangerous machinery and unprotected heights.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as addresser, charge account clerk, and order clerk.[21]

When assessing the medical-opinion evidence, the ALJ gave:

- partial weight to the opinion of treating physician Michael Cabasug, M.D.;

- limited weight to the opinion of James Opara, M.D.; and

---

[21] AR 22-29.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

- little weight to the opinion of State agency medical consultant Norman Staley, M.D.

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[22]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[23] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[24] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[25] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[26] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court

---

[22] AR 23.

[23] AR 1.

[24] 42 U.S.C. § 405(g).

[25] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[26] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[27] The Court considers the entire record as a whole.[28]

Further, the Court may not reverse an ALJ decision due to a harmless error.[29] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[30] The party appealing the ALJ's decision generally bears the burden of establishing harm.[31]

### IV.    Analysis

**A.    Plaintiff's Symptom Reports: Plaintiff fails to establish consequential error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must

---

[27] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[28] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[29] *Molina*, 674 F.3d at 1111.

[30] *Id.* at 1115 (quotation and citation omitted).

[31] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[32] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[33] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with the objective medical evidence, choice to decline other recommended treatment, improvement with pain medication, reason for ending employment unrelated to impairment, and daily activities.[34]

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[35] However, objective medical evidence is a relevant factor in

---

[32] *Molina*, 674 F.3d at 1112.

[33] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[34] AR 23-25.

[35] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

considering the severity of the reported symptoms.[36] The ALJ cited several specific reasons why Plaintiff's reported disabling symptoms conflicted with the objective medical evidence, including treatment notes where Plaintiff appeared to be in no apparent stress, had a normal gait, and was able to take off and put back on her shoes and climb up and down the exam table, despite distress and tenderness on palpitation of the suprapubic and umbilical areas of the abdomen.[37] While a

---

[36] *Id.* "Objective medical evidence" means signs, laboratory findings, or both. 20 C.F.R. §, 416.902(k). In turn, "signs" is defined as:

> one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms). Signs must be shown by medically clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.

*Id.* § 416.902(l).

[37] AR 361 (James Opara, M.D. noted Plaintiff "ambulated into the exam room in painful distress," "gait normal," "no problem taking her shoes off and putting them back on," "no problem climbing up and down the exam table," and "range of motion of all her joints are within normal limits."); AR 362 (Plaintiff was able to squat, but unable to hop because of abdominal discomfort with jumping.); AR 380, 385, 391, 398, 411, 417, 424-25, 431, & 451 (no apparent signs of distress) *compare with* AR 361 (Plaintiff ambulated into exam room in painful distress.).

different interpretation could be made as to the medical evidence, it is the ALJ's responsibility to resolve conflicts in the medical evidence.[38] Based on this record, the ALJ's finding that Plaintiff's reported severe symptoms were inconsistent with the medical evidence is a relevant factor for the ALJ to consider.

Second, the ALJ discounted Plaintiff's symptom reports because Plaintiff declined treatment recommendations by her treating doctor, a neurostimulator trial for her chronic bladder irritation and pain.[39] Instead of the neurostimulator trial, Plaintiff wanted to try another bladder sling surgery, which her treating doctor felt was not possible because Plaintiff did not have enough "healthy tissue" for the surgery.[40] Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may serve as a basis to discount a claimant's reported symptoms, unless there is a good reason for the failure.[41] Plaintiff reported she was "leery" of the device, but offered no explanation for why she declined the recommended neurostimulator trial over another bladder

---

[38] *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[39] AR 25.

[40] AR 368, 384, 390, & 466.

[41] *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

sling surgery.[42] This was a clear and convincing reason to discount Plaintiff's symptom reports. Moreover, Plaintiff failed to challenge this reason. Thus, any challenge is waived and the Court may decline to review it.[43]

The ALJ also found that Plaintiff's symptom testimony was inconsistent with the effective pain control with the use of pain medication. That a claimant's conditions improved with treatment is a relevant consideration for the ALJ when assessing the claimant's reported symptoms.[44] Here, the ALJ observed a reduction in pain and improved function when Plaintiff consistently took her pain medication.[45] The ALJ reasonably concluded that this evidence of improvement with treatment was inconsistent with the severe pain symptoms Plaintiff alleged.

---

[42] AR 382 & 384 (Plaintiff is leery of the device and lost the printed materials her treating provider gave her on it. Plaintiff reported wanting to conduct further internet research on the device.).

[43] *See Carmickle*, 533 F.3d at 1161 n.2.

[44] *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement).

[45] AR 341 ("Chronic pain issues are being controlled by the current treatment regime."); AR 352 (Plaintiff reported the pain medication allowed her to take care of her children and participate in activities with her family and friends.); AR 350 ("[Plaintiff's] current treatment regime is enabling the patient to experience improved function and decreased disability.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

The ALJ also discounted Plaintiff's symptoms because her most recent work ended for reasons unrelated to her impairments and the record showed that Plaintiff worked "inconsistently and sporadically" before the alleged onset date.[46] Evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's claim that she is unable to work.[47] In support of this finding, the ALJ cited to Plaintiff's earning statements, which indicated Plaintiff engaged in substantial gainful activity (SGA) in 2012 when she worked as a self-employed house cleaner.[48] Plaintiff's remaining reported work history did not qualify as SGA.[49]

Plaintiff argues the ALJ overlooked the fact that Plaintiff planned on returning to work following her pregnancy after she became pregnant in 2012 and subsequently stopped working.[50] Whether or not Plaintiff planned on returning to

---

[46] AR 23-24.

[47] *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); 20 C.F.R. § 404.1529 (work record can be considered in assessing reported symptoms); 20 C.F.R. § 416.929 (same).

[48] AR 204, 217, & 192.

[49] Plaintiff's earning statements indicated Plaintiff made approximately $1,941 in 2000, $3,777 in 2001, $3,282 in 2002, $112 in 2003, $1,113 in 2007, $13,418 in 2012, and no income in 2004, 2005-2006, and 2008-2011. AR 192.

[50] ECF No. 11 at 18.

work following her pregnancy, the ALJ's conclusion relating to Plaintiff's "sporadic" work history is supported by substantial evidence. This was a clear and convincing reason to find Plaintiff's symptom complaints less than credible.

The ALJ also discounted Plaintiff's symptom reports because they were inconsistent with her daily activities.[51] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[52] The ALJ highlighted that Plaintiff cared for her children (ages 2, 6, 11, and 18), prepared meals, washed dishes, swept, did laundry, drove a car, and shopped for groceries.[53] While a different interpretation could be made as to whether these activities are consistent with Plaintiff being able to sustain fulltime work, the ALJ articulated several other supported grounds for discounting Plaintiff's reported symptoms.[54] Plaintiff fails to establish the ALJ erred by discounting her symptom reports.

**B.    Medical Opinions: Plaintiff fails to establish consequential error.**

Plaintiff challenges the ALJ's assignment of partial weight to Dr. Cabasug's February 2016 medical report and the assignment of little weight to Dr. Cabasug's

---

[51] AR 24.

[52] *Molina*, 674 F.3d at 1113.

[53] AR 24, 48, 361, & 373.

[54] *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2009).

July 2018 medical report. As discussed below, the Court finds Plaintiff fails to establish that the ALJ's weighing of the medical-opinion evidence was erroneous.

     1.   <u>Standard</u>

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician, 2) an examining physician who examines but did not treat the claimant, and 3) a reviewing physician who neither treated nor examined the claimant.[55] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[56]

When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[57] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[58] may be

---

[55] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[56] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[57] *Lester*, 81 F.3d at 830.

[58] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

rejected for specific and germane reasons supported by substantial evidence.[59] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[60]

     2.   <u>Michael Cabasug, M.D.</u>

On February 10, 2016, Dr. Cabasug completed a WorkFirst Documentation Request Form.[61] Dr. Cabasug diagnosed Plaintiff with chronic pelvic and abdominal pain and opined that Plaintiff was limited to sedentary work with limits in lifting objects and standing for prolonged periods, and unable to bend over.[62] Based on these physical limitations, Dr. Cabasug opined that Plaintiff was limited to zero hours of participation per week (unable to participate).[63] The ALJ gave little weight to Dr. Cabasug's February 2016 opinion that Plaintiff was unable to participate in work related activities.

---

optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

[59] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[60] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[61] AR 280-82.

[62] AR 280.

[63] *Id.*

1

2

3

4

5

On July 19, 2018, Dr. Cabasug completed a medical report.[64] Dr. Cabasug diagnosed Plaintiff with chronic pelvic pain and opined Plaintiff would miss 4 or more days of work per month because of pain and be off-task over 30 percent of the time during a 40-hour work week.[65] The ALJ gave little weight to Dr. Cabasug's July 2018 opinion.

6

7

8

9

10

The ALJ discounted Dr. Cabasug's opinions because 1) they were unsupported by explanation and objective findings, 2) they were based on Plaintiff's subjective reports, 3) Plaintiff's symptoms improved with pain medication, and 4) they were inconsistent with Plaintiff's activities of daily living activities.

11

12

13

14

As to the ALJ's findings that Dr. Cabasug's check-box opinion was not explained and internally inconsistent, an ALJ may permissible reject opinions that do not offer any explanation for their limitations.[66] However, if treatment notes are consistent with the opinion, a check-box opinion may not automatically be

15

16

17

_____

18

19

[64] AR 402-03.

[65] AR 403.

20

21

22

23

[66] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported); *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996).

rejected.[67] Here, the ALJ found that Dr. Cabasug's treatment notes did not support a limitation of zero hours of participation in work activities per week. The ALJ cited to a February 2016 treatment note wherein Plaintiff appeared well nourished and in no distress[68] and a July 2018 treatment note wherein Plaintiff appeared tearful when describing recent events[69], but otherwise stable with no tenderness, hepatosplenomegaly, masses, guarding, rebound, or hernia in abdomen.[70] The ALJ also found Dr. Cabasug's opined physical limits in lifting and carrying objects, standing for prolonged periods of time and being unable to bend over, did not support Plaintiff being unable to participate in any work related activities.[71] Plaintiff argues Dr. Cabasug's opinned limitations were supported by sufficient explanation.[72] However, the ALJ's interpretation of this record is a rational interpretation of the record and supported by substantial evidence.

---

[67] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison*, 759 F.3d at 1014.

[68] AR 26 & 475.

[69] Plaintiff reported her children were recently taken into CPS custody after she was sexually assaulted at a hotel where her and her children were staying. AR 42 & 480.

[70] AR 28 & 481.

[71] AR 26 & 28.

[72] ECF No. 11 (citing AR 474).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Additionally, an ALJ may reject a medical source's opinion if it is too heavily based on a claimant's properly discounted subjective complaints.[73] Here, the ALJ found that Dr. Cabasug's opinion appeared to be based on Plaintiff's subjective reports because of the lack of objective medical evidence in Dr. Cabasug's treatment notes.[74] Plaintiff argues "it is not relevant that the record lacked objective findings" because "[Plaintiff's] disabling limitations are related to severe and vaginal/bladder issues."[75] However, objective medical evidence is a relevant factor along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.[76] In forming his opinion, Dr. Cabasug highlighted Plaintiff's chronic pelvic and abdominal pain and that she had multiple surgeries with post op complications.[77] Because the present record supports the ALJ's decision to discount Plaintiff's credibility, as discussed above, the ALJ properly disregarded Dr.

---

[73] *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

[74] AR 26 ("[F]or example, [Plaintiff] reported to Dr. Cabasug that she had limited movements due to her constant pain and was unable to lift more than 10 pounds.").

[75] ECF No. 11 at 11; *see id*. at 13.

[76] *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

[77] *See* AR 280 & 474.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

Cabasug's opinion, to the extent it was premised on Plaintiff's subjective complaints.[78]

The ALJ also discounted Dr. Cabasug's opinion because the only explanation cited for his 2018 opinion was pain, which improved with pain medication. A medical opinion may be rejected if it is unsupported by medical findings.[79] As previously discussed, the ALJ observed a reduction in pain and improvement in function when Plaintiff consistently took her pain medication.[80] On this record, the ALJ reasonably concluded that this evidence of improvement with pain medication was inconsistent with Dr. Cabasug's opinion that Plaintiff was unable to participate in any work activities and would miss four or more days in a week.

---

[78] *Tonapetyan v. Halter*, 1144, 1149 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

[79] *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).

[80] AR 341 ("Chronic pain issues are being controlled by the current treatment regime."); AR 352 (Plaintiff reported the pain medication allowed her to take care of her children and participate in activities with her family and friends.); AR 350 ("[Plaintiff's] current treatment regime is enabling the patient to experience improved function and decreased disability.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Lastly, the ALJ discounted Dr. Cabasug's limitations because they were inconsistent with Plaintiff's own reported activities.[81] An ALJ may discount a medical opinion that is inconsistent with the claimant's level of activity.[82] However, many "activities are not easily transferable to what may be the more grueling environment of the workplace."[83] The ability to care for young children without help has been considered an activity that may undermine claims of totally disabling pain.[84] However, an ALJ must make specific findings before relying on childcare as an activity inconsistent with disabling limitations.[85] Here, the ALJ highlighted Plaintiff cared for her three children (ages 2, 6, and 11) throughout the period of alleged disability.[86] While caring for her young children without help may be considered an activity that undermines Dr. Cabasug's opinion that Plaintiff was unable to participate in any work activities, Plaintiff testified she received help from friends and her older children.[87] Any error by the ALJ in relying on Plaintiff's daily activities as a basis to discount Dr. Cabasug's opinion is harmless because the

---

[81] AR 26.

[82] *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

[83] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[84] *Massanari*, 261 F.3d at 857.

[85] *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).

[86] AR 26.

[87] AR 50-51.

ALJ provided other specific and legitimate reasons, supported by substantial evidence to discount Dr. Cabasug' opinion.[88]

Because the ALJ articulated other grounds for discounting Dr. Cabasug's limitations, the ALJ's decision to discount Dr. Cabasug's opinion is upheld on this record.

**C.    Step Three (Listings): Plaintiff fails to establish error.**

Plaintiff contends the ALJ erred by failing to find that Plaintiff's impairments did not meet or medically equal Listing 1.08 (soft tissue injury, e.g., burns), singly or in combination, and by failing to adequately develop the record.[89]

Listing 1.08 requires a "[s]oft tissue injury (e.g. burns) of an upper or lower extremity, trunk, or face and head, under continuing surgical management, as

---

[88] *See Molina*, 674 F.3d at 1115.

[89] Plaintiff also mentions Listing 11.14 in passing. ECF No. 11 at 17. The reference to Listing 11.14 appears to be an erroneous addition, as Listing 11.14 pertains to peripheral neuropathy. Because Plaintiff failed to support a Listing 11.14 argument with any evidentiary or legal support, a Listing 11.14 argument is waived. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) ("We require contentions to be accompanied by reasons."); *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones."); *Carmickle v. Comm'r of Soc. Sec. Adm*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

defined in 1.00M, directed toward the salvage or restoration of major function, and such major function was not restored within 12 months of onset."[90] Listing 1.08 does not define what is meant by loss or restoration of major function. Courts which have considered the Listing, however, have applied the definition of a "functional loss" under 20 C.F.R. § 404, Subpart. P., App.1, § 1.00(B)(2).[91] Under this regulation, "functional loss for purposes of these listings is defined as the inability to ambulate effectively . . . or the inability to perform fine and gross movements effectively . . . ."[92] "Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities."[93] Examples of ineffective ambulation include, but are not limited to, "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability

---

[90] 20 C.F.R. § 404, Subpart P, App.1, Listing of Impairments 1.08.

[91] *See e.g., Kalland v. Berryhill*, 2018 WL 1586037 *14 (D. Mont. March 31, 2018); *Murray v. Comm'r of Soc. Sec.*, 2014 WL 4199725 *12 (E.D. N.Y. August 21, 2014 (collecting cases).

[92] 20 C.F.R. § 404, Subpart. P., App.1, § 1.00(B)(2).

[93] *Id.* § 1.00(B)(2)(b)(1).

to climb a few steps at a reasonable pace with the use of a single hand rail."[94] To ambulate effectively, "individuals must be capable of sustaining a reasonable walking pace or a sufficient distance to be able to carry out activities of daily living."[95]

Plaintiff accurately characterizes the ALJ's finding as to this particular listing as brief: "The severity of [Plaintiff's] impairment does not meet or medically equal any listed impairment. Although there is no specific listing for her condition, it has not affected any other body systems at listing-level severity."[96] However, the ALJ's discussion about the medical evidence concerning Plaintiff's chronic pelvic pain and daily activities in subsequent sections of the decision permits the Court to meaningfully review the ALJ's listing findings.[97]

Here, the ALJ meaningfully discussed the evidence that showed Plaintiff was able to care for her children (ages 2, 6, 11, and 18), prepare meals, wash dishes, sweep, do laundry, drive a car, and shop for groceries.[98] The ALJ also

---

[94] *Id.* at (b)(2).

[95] *Id.*

[96] AR 22.

[97] *See Bray* , 554 F.3d at 1226-27 (recognizing that the ALJ's decision must be analyzed based on his reasoning and findings and "not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking").

[98] AR 24, 48, 361, & 373.

highlighted Plaintiff presented with a normal gait, and was able to climb up and down from the exam table and squat.[99] On this record, there is sufficient evidence to support the conclusion that Plaintiff was able to carry out activities of daily living and ambulate effectively.

Accordingly, the ALJ's findings and analysis in the other sections of the decision permit the Court to meaningfully review the ALJ's listings denials – denials that are supported by substantial evidence. Moreover, the record is not ambiguous as to whether Plaintiff required an assistive device in order to ambulate effectively or was unable to complete routine ambulatory activities, such as shopping and cooking, which is required to meet Listing 1.08. Thus, the ALJ had no duty to develop the record on this issue.[100]

Plaintiff fails to establish the ALJ's finding that Plaintiff did not meet or medically equal any listing is not supported by substantial evidence or is based on legal error.

**D.    Step Five: Plaintiff fails to establish error.**

Plaintiff argues the ALJ's hypothetical failed to consider the improperly rejected limitations that Plaintiff would be unproductive 20 percent of the time,

---

[99] AR 24 (citing AR 36-62).

[100] *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

would need to lie down twice a day for an hour at a time, would need breaks away from the workstation up to 20 minutes every hour, and have unscheduled absences once per week. However, this argument merely restates Plaintiff's earlier allegations of error, which are not supported by the record. Accordingly, the ALJ's hypothetical properly accounted for the limitations supported by the record.[101]

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 5th  day of October 2020.


_____
s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge


---

[101] *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).